Sosnow, Kranz & Simcoe, Inc., et al., Appellants, et al., Plaintiffs, *v.* Storatti Corporation et al., Respondents.

First Department, April 20, 1945.

*John M. Aherne* of counsel (*James M. Hughes* with him on the brief; *Bigham, Englar, Jones & Houston,* attorneys), for appellants.

*Lewis F. X. Cotignola* of counsel (*Thomas M. Russell* and *George Natanson* with him on the brief; *Coughlan & Russell,* attorneys for 332 East 28 Street Corporation, and *Harte & Natanson,* attorneys for Storatti Corporation, Vincent Verratti and Eugenia Storz), for respondents.

UNTERMYER, J. Merchandise belonging to each of the plaintiffs-appellants was damaged by fire while on premises in the borough of Manhattan leased to the defendant Storatti Corporation. Against the defendant Storatti Corporation the causes of action of plaintiffs-appellants are in bailment. The defendants Verratti and Storz are officers of the Storatti Corporation. The causes of action asserted against them charge negligence in relation to the fire. Against the defendant 332 East 28 Street Corporation, the owner of the premises, the causes of action likewise charge negligence resulting in the loss.

Each plaintiff-appellant carried a policy of insurance covering the loss. The plaintiff Sosnow, Kranz & Simcoe, Inc., was insured with the Westchester Fire Insurance Company; the plaintiff New York Twine Corp., with the Royal Exchange Assurance Company. Each policy contained provisions authorizing the insurer upon the occurrence of a loss either to pay the loss or to make a loan for the amount of the loss and maintain an action in the name of the insured against other parties believed to be liable. That clause reads as follows:

" Insurer's Right to Institute Legal Proceedings in Name of Insured. It is expressly agreed that upon payment of any loss or advancement or loan of moneys concerning the same, that the Assured will at the request and expense of the Company, and through such counsel as the Company may designate, make claim upon and institute legal proceedings against any carrier, bailee, or other parties believed to be liable for such loss, and will use all proper and reasonable means to recover the same."

After the fire, each plaintiff-appellant filed written proof of loss with its insurer. On June 21, 1943, the plaintiff Sosnow, Kranz & Simcoe, Inc., executed and delivered a loan agreement to Westchester Fire Insurance Company and on the day following received a check equal to the full amount of the loss. On July 21, 1943, the plaintiff New York Twine Corp. executed and delivered to Royal Exchange Assurance Company a loan agreement and two days thereafter likewise received a check equal to the amount of its loss. The loan agreements are identical except with respect to names and amounts and, so far as material to the decision of the present case, provide as follows: " Received from the Royal Exchange Assurance Company the sum of Two Thousand Four Hundred & Four 00/100 Dollars ($2404.00) as a loan and not as payment of any claim, repayable only out of any net recovery the undersigned may make from any vessel, carrier, bailee, or others upon or by reason of any claim for the loss of or damage to the property described below, while on premises of Iris Dye Works at 336 East 28th St., N.Y.C., * * * and as security for such payment we hereby pledge to the said insurance company all such claims and any recovery thereon.

" * * * and we hereby appoint the agents and officers of the said Insurance Company and their successors, severally, our agents and attorneys in fact, with irrevocable power to collect any such claim and to begin, prosecute, compromise or withdraw, in our name, but at the expense of the said Insurance Company, any and all legal proceedings which they may deem necessary to enforce such claim or claims * * *."

Acting under the authority contained in the loan agreements authorizing each insurer to prosecute legal proceedings in the name of the insured to enforce claims against third parties liable for the loss, both insurers retained the same attorneys, who in the names of the plaintiffs-appellants instituted the present action to recover against the defendants the loss which each plaintiff-appellant had sustained. In their answers all the

defendants set up as a separate defense that the plaintiffs-appellants are not the real parties in interest in that each has received from its insurer the full amount of the loss and has " assigned and transferred " to the insurers the causes of action set forth in the complaint. On motion of the plaintiffs-appellants, the issues raised by these defenses were directed to be tried separately in advance of the trial of the action on the merits. At that separate trial the defendants offered evidence tending to establish that, notwithstanding the loan agreements, the parties in some respects had treated the transactions as if they constituted payment of their losses rather than loans. The court submitted to the jury, to be decided as an issue of fact, the question whether the transactions constituted loans to the plaintiffs-appellants by their insurers or payment of the losses. The court charged that if the transactions constituted payments rather than loans the insurers were subrogated to the rights of the plaintiffs-appellants and the plaintiffs-appellants were not the real parties in interest. On that issue the jury returned a verdict in favor of the defendants, which the court refused to set aside.

The question presented by this appeal involves the propriety of submitting to the jury this issue of fact in disregard of the loan agreements. That question is presented by motions by the plaintiffs-appellants to dismiss the affirmative defenses, by exceptions to the charge and to the court's refusal to charge, and particularly by the refusal of the court to direct a verdict in favor of the plaintiffs-appellants on the affirmative defenses which were the subject of the separate trial.

The effect of such loan agreements has been the subject of conflicting decisions. The Appellate Division of the Third Department in *Purdy* v. *McGarity* (262 App. Div. 623) held that the defendant was at liberty to establish that payment made pursuant to a loan agreement constituted payment of the loss rather than a loan. The Appellate Division of the Second Department, declining to follow the decision in *Purdy* v. *McGarity* (*supra*), has held that " the nature of the transaction is dependent solely upon the terms and provisions of the loan receipts which evidenced the agreement under which the moneys were advanced * * * ." (*Balish* v. *Advance Fuel Oil Corp.*, 266 App. Div. 683.) The rule applied by the Appellate Division of the Fourth Department appears to be the same. (*Anderson* v. *Socony-Vacuum Oil Co.*, 266 App. Div. 817.) The decisions of this court are not entirely harmonious and are not decisive of the issue.

We think the loan agreements by which the legal rights of the insurers and their assured were consciously and deliberately established may not be impugned by evidence tending to impair their effect. The purpose of the agreements was to secure for the insured an amount equivalent to their loss without subjecting the assured to the risk of liability for the repayment of the loans in the event that no recovery against a third party could be had, and without transferring to the insurer by subrogation (*Lord & Taylor* v. *Yale & Towne Mfg. Co.*, 230 N. Y. 132; *Ocean A. & G. Corp.* v. *Hooker Electrochem. Co.*, 240 N. Y. 37) the title to the claims. The parties had the right so to shape their transactions that title would reside wherever they saw fit. (*Luckenbach* v. *McCahan Sugar Co.*, 248 U. S. 139.) So long as the wrongdoer against whom the cause of action is asserted is not subjected to the danger of a double recovery, he is in no position to complain. There is no such danger where, by agreement of the parties, the title to the cause of action resides in the plaintiff. It is idle, therefore, to contend that such a loan agreement is a " sham " or a " fiction " which should be ignored. Similar contentions were answered in the early case of *Sheridan* v. *Mayor* (68 N. Y. 30) where the court said: " Precisely what the learned judge meant by a sham transaction, as applied to the transfer of the demand, is not very apparent, but I infer from this and other parts of the charge that he intended to charge, that although a legal title to the claim was transferred to the plaintiff and the assignment was valid as against the assignor, yet if the jury believed that the transaction was colorable, that is, that by any private or implied understanding the transfer was not intended as *bona fide,* or an actual and real sale of the demand as between the parties, the plaintiff could not recover. In this, with great respect, I think the learned judge erred. A plaintiff is the real party in interest under the Code, if he has a valid transfer as against the assignor, and holds the legal title to the demand. The defendant has no legal interest to inquire further. A payment to, or recovery by, an assignee occupying this position, is a protection to the defendant against any claim that can be made by the assignor. In this case, from the undisputed facts, the defendant would be protected if it paid to the assignee or if a recovery was had against it by him. No question was made and none submitted to the jury as to the execution or delivery of the assignment, and conceding that the circumstances were such as to justify the jury in finding that it was colorable as between the parties, yet that would constitute no defense on the ground that the plaintiff was not the real party in interest."

In *Sheridan* v. *Mayor* (*supra*) the assignor had transferred to the plaintiff only the barren legal title to the claim, retaining all the beneficial interest. In the present case the plaintiffs-appellants transferred to their insurers the beneficial interest in any recovery, but refrained from transferring the legal title to their claims. The controlling principle, therefore, is the same. By retaining title to the causes of action, the plaintiffs-appellants were constituted trustees of an express trust and as such are the real parties in interest to prosecute the claims (Civ. Prac. Act, § 210). The case also is indistinguishable from the recent decision in *Banca C. I. Trust Co.* v. *Clarkson* (274 N. Y. 69) where a similar relationship existed between the plaintiff and its insurer. Said the court: " Plaintiff's loss was made good by a surety company. This action was brought pursuant to an agreement between them that any recovery would be paid to the surety company. The question whether the plaintiff was the real party in interest was left to the jury. This was error, as was the refusal to strike out the defense which tendered that issue. As the trustee of an express trust, plaintiff was entitled to sue in its own name." The decision in *Cocoa Trading Corp.* v. *Bayway Terminal Corp.* (290 N. Y. 697 [opinion on reargument 290 N. Y. 865]) does not conflict with that conclusion. That case involved a motion to strike out as sham a defense which alleged that the plaintiff was not the real party in interest. In opposition to the motion, which was based on the existence of a loan agreement, the defendants' affidavit alleged as a fact that " the said insurance company became, by subrogation and assignment from plaintiff, the absolute owner of the claim herein sued upon." Accordingly, it did not conclusively appear that the plaintiff's cause of action had not been assigned to the insurer in addition to, and without relation to, the loan receipt.

The order and the judgment should be reversed, with costs, and the motions of plaintiffs-appellants for a directed verdict dismissing the defenses separately tried should be granted.

Dore, Cohn and Callahan, JJ., concur; Martin, P. J., concurs in result.

Order and judgment unanimously reversed, with costs, and the motions of plaintiffs-appellants for a directed verdict dismissing the defenses separately tried granted. Settle order on notice. [See *post*, p. 835.]